*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL PAUL MORGAN,

        Defendant-Appellant.

UNPUBLISHED
November 20, 2024
2:50 PM

No. 360170
Iosco Circuit Court
LC No. 21-002810-FH

Before: O'BRIEN, P.J., and BORRELLO and N. P. HOOD, JJ.

PER CURIAM.

Defendant, Michael Paul Morgan, appeals as of right his jury-trial conviction of one count
of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). The trial court sentenced
Morgan as a third-offense habitual offender, MCL 769.11, to serve one year in jail. On appeal,
Morgan argues that he was denied effective assistance of counsel when his trial counsel failed to
request specific jury instructions related to the charged offense. He also argues that the imposition
of court costs violated his constitutional rights. Finding no error, we affirm.

## I. BACKGROUND

This case arises out of Morgan's conduct at a U.S. Forest Service office in Oscoda
Township, Michigan. Officers with the Michigan Department of Natural Resources (DNR) and
U.S. Forest Service had been investigating a series of thefts from "pay pipes" or "fee pipes"[1]
throughout several state campgrounds and state forests in Northern Michigan. The officers
suspected that Morgan and his wife, Tiffany Gangle, were involved in the thefts and invited them

---

[1] A "pay pipe," "fee pipe," "pay tube," or "fee tube" is device similar to a collection box used to
collect payment at campgrounds when a ranger or attendant is not present. A camper may place
payment in an envelope with their name and site number and push the envelope into the pay tube
for later collection, keeping a stub as receipt. It operates on the "honor system."

to a Forest Service office under the pretense of an interview for a job as Forest Service campground hosts.

Morgan and Gangle arrived at the Forest Service office in an older model SUV that matched the description of the vehicle the officers had been looking for related to the thefts. Gangle entered the office for the interview while Morgan waited in the vehicle. In the office, two officers began questioning Gangle about the thefts, and Gangle voluntarily answered their questions. Meanwhile, two uniformed DNR officers and a plain-clothes Forest Service detective[2] approached Morgan in the parking lot. They identified themselves and asked Morgan to exit his vehicle. He exited the vehicle and allowed the officers to search him for weapons. Unknown to Morgan, when the officers approached the vehicle, they in-hand search warrants for his cell phone and vehicle.

When speaking with the officers, Morgan denied having any knowledge about the pay pipe thefts. The officers then showed Morgan photos they had as evidence of the thefts. They also showed him copies of search warrants for his vehicle and cell phone. Morgan returned the search warrants after viewing them and asked if he was free to leave. An officer advised Morgan that he was free to leave but explained that they would need his cell phone and the keys to his vehicle.

Morgan then asked if Gangle was free to leave, and an officer informed him that she was voluntarily answering questions in the Forest Service office. The detective advised Morgan that he could not enter the office because he would be interfering with a Forest Service investigation. But Morgan began yelling and running toward the office. An officer testified that he chased Morgan and yelled for him to stop multiple times, but Morgan did not comply. The officer then grabbed Morgan as he reached the office, but Morgan pulled his arm away and entered. Morgan interrupted Gangle's interview, yelling that he had "power of attorney" over Gangle and that the police had to end their questioning. The officers eventually removed Morgan from the office and arrested him for resisting and obstructing a police officer.

At trial, the DNR officers testified about their interaction with Morgan. One of the officers recorded part of the interaction with Morgan. The officer did not begin recording the interaction until it began to escalate, recording approximately three minutes of the interaction. The prosecution introduced that audio recording into evidence. The recording captured the Forest Service detective warning Morgan that he would be interfering with an investigation if he entered the Forest Service office.

Morgan's primary defense at trial was that he did not hear the officers' commands to not enter the office or to stop as he moved toward it. Morgan testified in his defense. He claimed that he did not hear commands from the officers prior to his arrest and that the officers had walked a distance away from Morgan before giving the commands. Defense counsel had also cross-examined the officers on whether the commands were audible in a recording of the arrest. The

---

[2] During the trial, the DNR officers identified the Forest Service employee as a Forest Service "detective," not a "special agent." To the extent any distinction exists, it is immaterial to our resolution of this appeal. They described him as dressed in plain clothes, but with his badge and firearm visible on his hip.

defense did not focus or explicitly challenge the lawfulness of the commands or the lawfulness of the police conduct.

To that end, the defense did not request a jury instruction on the lawfulness of the arrest. Prior to instructing the jury, the trial court reviewed the final instructions with counsel for both sides. The defense explicitly stated that it had no objections to the proposed jury instructions. Those instructions did not include an instruction on the lawfulness of the police conduct or a special unanimity instruction. They did, however, include the pattern instruction on unanimity, M Crim JI 3.11(3).

The jury ultimately found Morgan guilty of assaulting, resisting, or obstructing a police officer.

After trial, Morgan moved for a new trial, claiming ineffective assistance of counsel. After a hearing on the motion, the trial court granted Morgan a *Ginther*[3] hearing. During the hearing, defense counsel testified that he decided not to request that the trial court instruct the jury using M Crim JI 13.5 (the pattern jury instruction on lawful police conduct) or a specific unanimity instruction. He believed they were not appropriate for the facts of Morgan's case because they conflicted with his defense theory (i.e., that Morgan could not hear the officers). Defense counsel was aware of the caselaw regarding both jury instructions, but he believed that the instructions provided by the court adequately informed the jury as to his theory and that additional instructions would cause the jury to focus on Morgan's multiple potentially obstructive acts. Defense counsel also testified that he consulted with Morgan's previous counsel when making his decision to not request the additional instructions.

After the *Ginther* hearing, the trial court found that defense counsel was not ineffective, and it denied Morgan's motion for a new trial. The trial court found that defense counsel's decisions amounted to a reasonable trial strategy and concluded that it could not find "that [defense counsel]'s strategy to keep it confined to maybe one act, that he was trying to get the jury to bite on was—or fell below an objective standard of reasonableness under prevailing professional norms." This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Morgan argues that he was denied the right to a properly instructed jury because the trial court failed to provide M Crim JI 13.5 in its final instructions, and that he was denied the right to a unanimous jury verdict because the trial court failed to provide a specific unanimity instruction. In the alternative, he argues that his defense counsel was ineffective by failing to request these instructions.

As an initial matter, we conclude that by expressly and explicitly approving of the jury instructions at trial, Morgan has waived his challenges to the jury instructions. *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) ("A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review."). Therefore, our review is

---

[3] *People v Ginther*, 390 Mich 436, 445; 212 NW2d 922 (1973).

limited to Morgan's argument that defense counsel was ineffective for failing to request the omitted instructions.

Whether counsel was ineffective presents a mixed question of fact and law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). Because Morgan moved for an evidentiary hearing on this basis, his claim is preserved. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

An ineffective-assistance-of-counsel claim has two parts: (1) deficiency and (2) prejudice. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). See also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Fyda*, 288 Mich App at 450. Regarding the first prong, deficiency, "[t]rial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). "When reviewing defense counsel's performance, the reviewing court must first objectively determine whether, in light of all the circumstances, the identified acts or omissions were outside of the wide range of professionally competent assistance." *Id*. at 105-106 (quotation marks and citation omitted). The second prong, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022) (quotation marks and citation omitted). "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. at 637 (quotation marks and citation omitted).

Both of Morgan's claimed deficiencies relate to counsel not requesting specific jury instructions. Regarding instructional error, "[a] criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citation omitted). "One of the essential roles of the trial court is to present 'the case to the jury and to instruct it on the applicable law' with instructions that include 'all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence.' " *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018), quoting *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

Both of Morgan's claimed deficiencies are not just tied to instructional error, but are specifically tied to instructions on the charge: resisting and obstructing a police officer, MCL 750.81d. The charge of resisting or obstructing a police officer requires the prosecution to prove: "the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and . . . the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014). This breaks down into at least three elements. See *id.* See also M Crim JI 13.1. First, the prosecution must prove that the defendant *resisted* or *obstructed* a police officer. See *Vandenberg*,

-4-

307 Mich App at 68. "Obstruct" includes the knowing failure to comply with a lawful command. See MCL 750.81d(7)(a). Second, the prosecution must prove that the defendant *knew or had reason to know* the specific officer was an officer performing their duties at the time. *Vandenberg*, 397 Mich App at 68. And, third, the prosecution must prove that the specific officer gave the defendant a *lawful command*, was making a *lawful arrest*, or was otherwise performing a *lawful act*. *People v Moreno*, 491 Mich 38, 58; 814 NW2d 624 (2012). Depending on the case and the charge, each of these elements may require additional or niche instructions. For example, MCL 750.81d does not "abrogate the common-law right to resist unlawful arrests or other unlawful invasions of private rights." *Moreno*, 491 Mich at 58. "[T]he lawfulness of the arrest" is an element of resisting a police officer and is "a factual question for the jury." *Vandenberg*, 307 Mich App at 68-69. Therefore, " 'the prosecution must establish that the officers' actions were lawful.' " *Id*. at 68, quoting *Moreno*, 491 Mich at 52.

Morgan first argues that the legality of the officers' conduct and commands was central to his defense theory at trial, and that M Crim JI 13.5 was necessary for the jury to evaluate the lawfulness of the officers' conduct. He argues that his counsel was deficient for failing to request this instruction. We disagree. The record does not support Morgan's claim. While defense counsel generally referenced "lawfulness" in his opening and closing arguments, Morgan never directly challenged the lawfulness of the officers' commands at trial. Instead, defense counsel explained that his theory at trial was that Morgan simply did not *hear* the commands and that he therefore lawfully entered the office. Morgan even testified that he did not believe the officers' conduct was unlawful. Further, the trial court instructed the jury on the elements of resisting and obstructing, including that the prosecution had the burden to prove that the officers "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." There is no basis to conclude that the jury was not properly instructed as to the material issues and defenses raised at trial. See *Craft*, 325 Mich App at 606-607. Accordingly, M Crim JI 13.5 was not necessary or appropriate, and counsel was not ineffective for failing to make a meritless objection or argument. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). We therefore conclude that Morgan has not established ineffective assistance of counsel related to M Crim JI 13.5 because he has not established that defense counsel was deficient by not requesting it.

Morgan next argues that defense counsel was deficient for failing to request a specific unanimity instruction. He argues that there were several materially distinct acts in this case, each of which, if proven, would have been sufficient to satisfy the elements of assaulting, resisting, or obstructing a police officer. Morgan contends that defense counsel rendered ineffective assistance by failing to request a specific unanimity instruction. We again disagree.[4]

Criminal defendants are afforded the right to a unanimous jury verdict. MCR 6.410(B). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to

---

[4] We observe that Morgan has not raised a double jeopardy challenge to a potentially duplicitous charge. See generally *People v Oliphant*, 399 Mich 472, 513 n 16; 250 NW2d 443 (1976) (LEVIN, J., dissenting) (stating that "[t]he law prohibits the filing of a duplicitous information because it recognizes the difficulty of defending against multiple charges.").

properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). A general unanimity instruction ordinarily is sufficient to protect a defendant's right to a unanimous verdict. *Id*. at 512. A specific unanimity instruction is required where "the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or . . . there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." *Id*. at 524.

Morgan argues that the jurors could have believed that he violated the above statute when he (1) failed to obey commands to not enter the Forest Service building, (2) interfered with the execution of the search warrant, (3) failed to stop when ordered by an officer, or (4) engaged in multiple alleged acts of physical resistance in the lobby. However, the acts Morgan references are not materially distinct and did not require a specific unanimity instruction. Each act constituted part of the same criminal transaction, lasting less than four minutes. The officers advised Morgan that he could not enter the office, and Morgan quickly moved toward the office door. An officer chasing Morgan yelled for him to stop multiple times and grabbed Morgan's arm before Morgan pulled his arm away. Inside the office, Morgan held onto the reception window as the officers tried to pull him away. Morgan continued yelling and falling to the ground after the officers finally arrested him. The acts Morgan identifies belong to one "continuous course of conduct" that did not require a specific unanimity instruction. See *Cooks*, 446 Mich at 528. In other words, they can be viewed as single transaction of obstruction.

Equally important, Morgan did not offer a separate defense to each act. Rather, he argued only that he did not hear the officers command him to not enter the building or to stop. Therefore, the jury's sole duty in Morgan's case "was to determine the credibility" of Morgan "with respect to the pattern of alleged conduct." See *id*. The trial court instructed the jurors to submit questions they had during deliberations to the bailiff, and the record reflects that they did not do so. The record also reflects that the jury returned its verdict after 10 minutes of deliberation. There is no reason to believe the jury was confused or disagreed about the factual basis of Morgan's guilt. See *id*. Accordingly, a specific unanimity instruction was not required, and defense counsel was not ineffective for failing to make a meritless objection or argument. See *Ericksen*, 288 Mich App at 201.

At the *Ginther* hearing, trial counsel testified that the decision not to request a unanimity instruction was strategic. It ultimately was an attempt to not draw further attention to the myriad ways Morgan resisted and obstructed the officers during his interaction with them. We will not now second guess this trial strategy. Because Morgan has failed to establish that trial counsel was deficient, he cannot establish his ineffective-assistance-of-counsel claim.

## III. ASSESSMENT OF COURT COSTS

Morgan also argues that the trial court's imposition of court costs pursuant to MCL 769.1k(1)(b)(*iii*) was unconstitutional. He alleges that the statute violates his due-process right to be heard by a neutral arbiter and violates separation-of-powers principles. We disagree.

This Court considered and rejected each of the arguments Morgan raises regarding MCL 769.1k(1)(b)(*iii*) in *People v Johnson*, 336 Mich App 688; 971 NW2d 692 (2021) (holding that

MCL 769.1k(b)(*iii*) does not deny criminal defendants their due-process right to be tried before an impartial decisionmaker and that it does not violate separation-of-powers principles). Our Supreme Court initially granted leave to appeal in *Johnson* and directed the parties to address the constitutionality of MCL 769.1k(1)(b)(*iii*). See *People v Johnson*, 509 Mich 1094 (2022). However, our Supreme Court subsequently denied leave to appeal. *People v Johnson*, 511 Mich 1047 (2023). This Court's holding in *Johnson*, 336 Mich App 688, is controlling law with respect to Morgan's claims, and we are bound by its decision. See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."); MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."). Relying on *Johnson*, we find no constitutional violation related to the imposition of court costs.

We affirm.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood